<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
:
THOMAS SCOTT HANNAWAY, an,            :
individual,                                            :
                                                           :
          Plaintiff,                                    :          Civil Action No. 07-2383 (JAG)
                                                           :
               v.                                        :          **OPINION**
                                                           :
YONKA PARIS, a Foreign Company[;]    :
MULTALER, INC., aka YONKA USA, a    :
Corporation; FRANCOISE                      :
MUHLETHALER, an individual;            :
CATHERINE MUHLETHALER, an          :
individual; HERVE PONTACQ, an          :
individual; and DOES 1 through 25,        :
inclusive,                                             :
                                                           :
          Defendants.                                :
_____:

**<u>GREENAWAY, JR., U.S.D.J.</u>**

          This matter comes before this Court on the motion of Defendants Multaler, Inc. a/k/a

YON-KA Paris U.S.A., improperly named YONKA PARIS and YONKA USA, and Herve

Pontacq (collectively "Defendants"[1]), to dismiss Plaintiff Thomas Scott Hannaway's ("Plaintiff")

Second Amended Complaint for failure to state a claim upon which relief can be granted,

pursuant to FED. R. CIV. P. 12(b)(6); and Plaintiff's cross-motion to stay this action pending

resolution of the matter before the Superior Court of New Jersey, Appellate Division.  For the

_____

          [1] Defendants Francoise Muhlethaler and Catherine Muhlethaler did not join in this
motion.

1

reasons stated below, Defendants' motion to dismiss is granted.  Plaintiff's motion to stay is denied, as moot.

## I. <u>FACTUAL BACKGROUND</u>

On January 24, 2006, Plaintiff, with Sinead Norenius, filed a complaint against Defendants in the Superior Court of the State of New Jersey, County of Morris ("state court action").  (<u>See</u> <u>generally</u> Certification of Joseph D. Guarino ("Guarino Certif.") Ex. B.)  The plaintiffs asserted, *inter alia*, claims for sexual harassment, retaliation, wrongful termination, and breach of implied contract, pursuant to both the New Jersey Law Against Discrimination and New Jersey common law.  (<u>Id.</u>)  The gravamen of the complaint was that Defendant Herve Pontacq, the plaintiffs' supervisor, made sexually explicit statements and created a hostile work environment.  (<u>Id.</u> at 2-7.)

Defendants moved to dismiss the complaint, and Judge John J. Harper J.S.C. heard oral argument on August 4, 2006.  (<u>See</u> <u>generally</u> Guarino Certif. Ex. C.)  At the conclusion of the hearing, Judge Harper granted Defendants' motion to dismiss as to ten of the twelve counts in the complaint.  (<u>Id.</u>)  The plaintiffs appealed the dismissal (<u>see</u> Decl. of Timothy J. McIlwain ("McIlwain Decl.") Ex. A), and the Superior Court of New Jersey, Appellate Division scheduled oral argument for March 5, 2008 (McIlwain Decl. Ex. C).[2]

Prior to the state court action appeal, Plaintiff filed the instant matter in this Court on May 21, 2007.  (<u>See</u> <u>generally</u> Compl.)  On November 2, 2007, Plaintiff filed his Second Amended Complaint and asserted common law claims for hostile work environment, sexual harassment, retaliation, wrongful termination, negligent failure to supervise, and breach of

---

[2] This Court is not aware of any decision from the appellate court.

implied contract.  (See generally Second Am. Compl.)  The crux of Plaintiff's claims stem from allegations that his supervisor, Defendant Pontacq, made offensive and unwelcome, sexually explicit comments, and required Plaintiff to perform sex-related tasks unrelated to Plaintiff's employment.  (Id. at 4-8.)

On December 27, 2007, Defendants moved to dismiss the Second Amended Complaint based on the entire controversy doctrine.  (See generally Defs.' Mot. to Dismiss.)  Plaintiff opposed the motion, but alternatively, filed a motion to stay the proceedings before this Court pending resolution of the state court action appeal.  (See generally Pl.'s Opp'n to Defs.' Mot. to Dismiss; see also Mot. to Stay.)

## II.  STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citations omitted).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to

3

be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993)

(quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

 A court must accept as true all allegations in the complaint and all reasonable inferences

that can be drawn therefrom, and view them in the light most favorable to the non-moving party.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also

Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  The question is whether the claimant can

prove any set of facts consistent with his or her allegations that will entitle him or her to relief,

not whether that person will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173

(3d Cir. 2000).

 In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the

allegations of the complaint, as well as documents attached to or specifically referenced in the

complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259

(3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the

texts of the documents on which [their] claim is based by failing to attach or explicitly cite

them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A]

'document *integral to or explicitly relied* upon in the complaint' may be considered 'without

converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original)

(quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Any further

expansion beyond the pleading, however, may require conversion of the motion into one for

summary judgment.  FED. R. CIV. P. 12(d).[3]

## III. DISCUSSION

Federal courts must honor the judgments of state courts to the same extent that the court

that entered the judgment would honor it.  See 28 U.S.C. § 1738.  Therefore, a federal court is

bound by the entire controversy doctrine when determining the effect of a prior New Jersey state

court judgment on the federal cause of action before it.  Opdycke v. Stout, 233 F. App'x 125,

128-29 (3d Cir. 2007) (citing Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 887

(3d Cir. 1997)).

"For over [seventy] years, it has been established in New Jersey that the entire

---

[3] Defendants submit the Certification of Joseph D. Guarino, and several other exhibits, in support of their motion to dismiss.  (See generally Guarino Certif.)  The exhibits include the following documents from the state court action record:  the complaint, the trial court's order granting Defendants' motion to dismiss and the transcript relating to the hearing for that motion, a certification of the plaintiffs' counsel, and the plaintiffs' brief in support of their motion to amend the court's order dismissing the complaint and for leave to amend the complaint.  (See Guarino Certif. Exs. B-C, L-M.)  Defendants also attach a series of correspondence between counsel for Plaintiff and Defendants relating to the matter before this Court.  (Id. at Exs. E-K.)

Documents contained in the record in other court proceedings have been construed as matters of public record.  See In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, 273 (D.N.J. 2007) (citing Jackson v. Broad. Music, Inc., No. 04-5948, 2006 U.S. Dist. LEXIS 3960, *18 (S.D.N.Y. Jan. 31, 2006) (stating that "the court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action' without converting the motion into one for summary judgment") (internal citation omitted))); Adams v. Jones, No. 96-4377, 1999 U.S. Dist. LEXIS 3990, *14 n.4 (E.D. Pa. March 30, 1999) (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (stating that "[a] district court deciding either a Rule 12(b)(6) motion or a motion for summary judgment is entitled to take judicial notice of the factual record of a prior proceeding.")).  Therefore, this Court will consider only the documents that were filed in the state court action, and will not convert this motion into one for summary judgment.

controversy doctrine[4] requires the mandatory joinder of all claims to a single transaction." Oliver v. Ambrose, 705 A.2d 742, 746 (N.J. 1998); see also Codgell v. Hospital Ctr., 560 A.2d 1169, 1177 (N.J. 1989) (stating that the doctrine requires a party to join all claims, cross-claims, counterclaims, and defenses relating to a controversy, and "all parties with a material interest in the controversy[,]" or be barred from bringing a later action "involving the same underlying facts."). Under this equitable rule, "a party cannot withhold part of a controversy for separate[,] later litigation, even when the withheld component is a separate and independently cognizable cause of action[,]" Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999), and a party is prohibited from later relitigating claims that were brought in an earlier proceeding, Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (internal citations omitted) (stating that "[a]lthough sometimes approached as if they belong to two different families, New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives. The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."); see also Bernardsville Quarry v. Borough of Bernardsville, 929 F.2d 927, 930 (3d Cir. 1991) ("Pursuant to the Entire Controversy Doctrine under New Jersey law, a plaintiff is precluded from litigating in a subsequent proceeding *both claims that it actually litigated* and claims that it could have litigated in an

---

[4] The entire controversy doctrine is codified in N.J. Court R. 4:30A, and provides that the

> [n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67(a) (leave required for counterclaims or cross-claims in summary actions).

earlier proceeding.") (emphasis added).

The rule is intended to serve three purposes:  (1) complete and final disposition of cases without piecemeal adjudication; (2) fairness to the parties, and to others with a material interest in the action; and (3) efficiency.  Id. at 502; see also Oliver, 705 A.2d at 746 (quoting Ajamian v. Schlanger, 103 A.2d 9, 10 (N.J. 1954) (stating that the purpose of the of the entire controversy doctrine is to ensure the "just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants.  It is a fundamental objective of this procedural reform to avoid the delays and wasteful expense of the multiplicity of litigation which results from splitting of a controversy.")).

> In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.  It is the core set of facts that provides the link between the distinct claims against the same parties or different parties and triggers the requirement that they be determined in one proceeding.

DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (internal citations omitted).  In order for the doctrine to apply, "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action."  Fisher v. Yates, 637 A.2d 546, 552 (N.J. Super. Ct. App. Div. 1994).  "[T]he doctrine will not bar a claim that was unknown or unaccrued at the time of the original action.  However, where the plaintiff had sufficient information to have included the claims in the prior suit, mandatory joinder is not unfair."  Oliver, 705 A.2d at 748 (internal citations omitted).

Defendants argue that the entire controversy doctrine precludes Plaintiff from bringing this case.  This Court agrees.

7

A cursory review of the complaint filed in the state court action and the Second Amended Complaint reveals that not only are these two actions based on related facts, but are they based on the same facts. (Compare Guarino Certif. Ex. B with Second Am. Compl.) In fact, the two complaints reference the same events and use similar language in describing the alleged conduct of Defendant Pontacq. For example, the complaint in the state court action states

> Defendant Pontacq would teach the following philosophy of the Company when conducting sales meetings with employees:
> Our sales goals are not just to go out horny and have a one night stand with a new client . . . . No our sales goals are to keep the relationship going beyond dirty sex the first night and get the customer to marry us for a long term relationship.
>
> Defendant Pontacq would on a regular basis inquire into [Yonka employees'] sexual history and experiences after being told it was an inappropriate subject matter for the workplace.
>
> Defendant Pontacq would explain to Plaintiff Hannaway that Yonka's corporate colors were intentionally chosen because they are the colors of "sex" not because it is good packaging and marketing.

(Guarino Certif. Ex. B at 5.) The Second Amended Complaint states the same. (See Second Am. Compl. 4-5.)

This Court finds that Plaintiff has attempted to relitigate the same claims in this Court as those he pled and lost in state court. See Bernardsville Quarry, 929 F.2d at 930. Plaintiff had a fair and reasonable opportunity to fully litigate these exact claims in state court. Fisher, 637 A.2d at 552. Indeed, Plaintiff has appealed this matter, and is awaiting a decision from the state appellate court. (Pl.'s Opp'n to Mot. to Dismiss 2.) Plaintiff may not bring anew matters that have already been disposed of simply because he disagrees with the result. See 28 U.S.C. § 1738; see also Bernardsville Quarry, 929 F.2d at 930.

8

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), is granted, with prejudice.  Plaintiff's motion to stay is denied, as moot.


Date:  September 11, 2008

                S/Joseph A. Greenaway, Jr._____

                JOSEPH A. GREENAWAY, JR., U.S.D.J.